JOHNSON, BROS. & CO., Plaintiffs in Error, *vs.* JAMES GILFILLAN, Defendant in Error.

#### ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Where land warrants were sold and guaranteed by the vendor to be in "all respects genuine and receivable at the General Land Office of the United States," and such warrants were rejected by the Commissioner of the General Land Office because the assignments were "false and forged," a cause of action accrues to the guarantee or his assignee at the time of such decision, and not at the date of the guaranty.

When a land warrant is located at one of the local land offices of the United States in payment for land, the warrant is not cancelled, nor does the title to the same pass from the locator until it is accepted in payment of the lands by the United States, which acceptance does not become consummate until the entry is fully confirmed by the General Land Office. If confirmed, the act has relation to the time of the entry.

A custom of trade which would authorize the vendor of a land warrant guaranteed as above, and rejected by the General Land Office, to substitute another warrant in the place of the defective one, as a satisfaction of his guaranty, is not a valid custom. It is in effect a custom to pay in kind on the breach of a guaranty, instead of responding in damages according to the rules of the common law.

Points and Authorities of Plaintiffs in Error.

I.—There was privity of contract between the Plaintiffs in Error and Officer and Ames, (through whom the warrants passed to McKenty,) and McKenty. The latter having located the land warrants, they became dead; so far as any future transfer could be made, and the guaranty died with them. Gilfillan could have possessed no direct interest either in the warrants or guaranty. Consequently there was no privity of contract between him and Plaintiff in Error, and he could not sue for price of warrants or upon guaranty.

The Defendant in Error does not make allegations to show cause of action either in Officer, Ames or McKenty, and then allege assignment of such cause of action to himself, but his allegations, if admitted, would show cause of action in himself without assignment.

Strike out of the complaint the allegation as to assignment of cause of action and the complaint would be good. If the

answer denied assignment or denied notice and alleged settlement with either of the other parties,—it would be no answer to the complaint.

It is claimed by Defendant in Error (as we shall see below) that no cause of action arose until the warrants were decided bad by the General Land Office. If such be the case, the allegation in the complaint that prior to such decision the warrants had been sold and guaranty transferred to Defendant in Error, would, if admitted, go to show that at the time such action arose it was in Defendant in Error.

II.—The Court below erred in rejecting evidence in regard to custom. The trade in land warrants must, in its nature, be *sui generis*. It has lately arisen and any custom growing up with trade should govern parties. Warrants are issued by Government for the purpose of enabling holders to procure title to government lands. The custom pleaded is that where a party sells a warrant to another, and it is located, in the event of the warrant being rejected, the vendor may and shall substitute another in order that title may be perfected in vendee. And in all cases the rule is, that a party selling a defective warrant can only comply with his guaranty by substituting a good one without reference to intermediate variation of prices.

Evidence is admissible of the modes of business in particular trades. The clear and explicit language of a contract may not be restricted or enlarged by proof of a custom or usage, but in applying a contract to its subject matter, the custom and usage of trade are admissible to show what subjects are within its operation. *Howe vs. Mutual Insurance Co.*, 1 *Sand.*, 137; *N. Y. Dig.*, 4, 1326.

Evidence was rejected going to show what meaning the usage of the trade gave to the words used in the guarantee. *Eaton vs. Smith*, 20 *Pick.*, 146; *Minot's Dig.*, 700.

The effect of evidence of usage given to control the construction of a written instrument is to be determined by the jury. *Dawson vs. Kittle*, 4 *Hill*. 107; *Halsey vs. Brown*, 3 *Day*, 346; 1 *U. S. Dig.*, 648; *sec. 9; see also, 3 Pick.*, 435; *Minot's Dig.*, 700; *Kenner vs. Bank of Columbia*, 9 *Wheat.*, 581;

*Vol.* 3, 126; *Condensed Rep.*, *note*; 15 *Pick.*, 179; 7 *Mass.*, 36, 46.

In regard to the objection that the records of the land office are not the best evidence. *See* 4*th Peters Reps.*; *Galt et als.*, *vs. Galloway*, *p.* 331.

III.—The Court below erred in deciding that the statute of limitations began to run not until the decision of the General Land Office upon the validity of the warrants or the assignments.

The statute began to run from the date that the cause of action accrued, and that was upon the day of sale.

At the time of the sale, land warrants were in law deemed chattels, and the law implies a warranty of title in the vendor of a chattel, which is broken immediately if he have no title, and from that time the statute of limitations begins to run. *U. S. Dig.*, 360; *Chancellor vs. Wiggins*, 4 *B. Munroe*, 201; *Kavanagh vs. Weedon*, 1 *Ala.*, 231; *U. S. Dig. Sup.*, 359; 4 *Gill & Johnson, Md. Rep.*; *Bell vs. Morrison*, 1 *Peters*, 360.

Points and authorities of Defendant in Error.

I.—The complaint does state a cause of action which will support the judgment. If there was a breach of the guaranty, and a cause of action thereupon arose either to Officer, Ames or McKenty, it was assigned to the Defendant in Error.

And the other allegations in the complaint are to show the breach, when and how it occurred, &c.

As to the ruling of the Referee, in rejecting the evidence in regard to " custom," we think there was no error :

1st. Because no proof was offered to show, and it was not pretended, that Officer, the party to whom the guaranty was given, and who at the time resided in Minnesota, had any knowledge of the pretended custom, or contracted with reference to it. The rule is that " knowledge of a custom must be brought home to a party who is to be charged by it." *Parson on Contracts, vol.* 2,*p.* 57, 3*d edition.*

2nd. Because the contract or guaranty is clear, definite and unambiguous, and such contracts cannot be affected by any

vol. viii.—51

"custom," however universal, old or well known. In such cases, the custom is waived by the parties. *Parson on Contracts*, *vol.* 2, *p.* 59, *and cases cited in note*; 2 *Sum.*, 567.

3d. Because the proof offered was of a custom for discharging a party from liability upon his broken contract, in a manner wholly unknown to the law.

.4th. Because the proof offered was of a custom as to the character of contracts generally made in the sale of land warrants, and of what was required of the vendor upon a breach of his contract.

II.—As to the statute of limitations, the question can only come up for consideration upon the ground that the conclusions of law, as found by the Referee, are not supported by the facts found by him. The case does not pretend to embrace the evidence given upon the trial, neither does it embrace the facts found by the Referee. It only embraces the seventh fact found, which is as to the place where the contract was made, and that by an act of the State of Maryland, approved in 1715, actions upon contract were limited to be commenced within three years.

The cause of action upon the guaranty did not accrue until the land warrants were rejected at the land office. The warrants were genuine, but whether they would be receivable at the general land office, was another question, which could only be determined by there presenting them, to see whether they would be receivable or rejected. The action was commenced within three years from the time they were so presented and rejected. From the complaint it appears *when* said warrants were so rejected by the general land office, and the reason thereof, all of which the answer admits.

The Plaintiffs in Error guaranteed "said warrants in all respects to be genuine, and *receivable* at the General Land Office of the United States." As they were genuine, no action could be maintained for a breach, or upon the guaranty in this respect. Nor could any action be maintained upon the other breach of the guaranty until it was determined that they would not be received at the General Land Office, which could only be done by presenting them there, or having the decision or determination of that office in respect thereof.

The existence of the cause upon which they might be or were rejected does not determine the right of action, but it is the actual interposition of that cause by the General Land Office against receiving them.

Wm. Sprigg Hall, Counsel for Plaintiffs in Error.

Smith & Gilman, Counsel for Defendant in Error.

*By the Court.*—Flandrau, J.—We gather the following facts from the case. On the 24th of December, 1856, the Defendants below sold to Harvey Officer certain land warrants in the city of Baltimore, and guaranteed them to be in " all respects genuine and receivable at the General Land Office of the United States." They were afterwards, together with the guaranty, sold by Officer to Ames, and by Ames to McKenty, who, on the 13th day of January, 1857, located them on certain lands of the United States, and deposited them in payment therefor in the local land office at Chatfield in this State. Before the 18th of March, 1861, McKenty sold and conveyed by warranty deed the lands upon which the warrants had been located, and also the warrants and the Defendant's guaranty to the Plaintiff, and on the 19th day of March, 1861, the warrants were refused by the Commissioner of the General Land Office, on the ground that the assignments were not genuine.

Before the commencement of the action, the Plaintiff purchased of Officer, Ames and McKenty, any and all claim or cause of action which they or each of them had or might have against the Defendants, on account of the sale and guaranty of the warrants.

It is as well to settle here the point made by the Defendant's counsel as to the character in which the Plaintiff sues, whether as original owner of the cause of action, or as assignee of Officer, Ames or McKenty. And in examining this question we are necessarily led to a decision of the plea of the statute of limitations which is set up by the Defendants.

When the warrants were sold and the guaranty given on the 24th day of December, 1856, the assignments were void and

the Commissioner of the General Land Office refused them for that reason.   The Defendants insist that the cause of action accrued to Officer at the moment of his purchase, because at that time they were not receivable.   On the other hand the Plaintiff claims that no cause of action arose until the actual rejection of them by the Commissioner, because had he received them, no matter whether the assignments were good or bad, the guaranty would have been satisfied.   The defects in the assignments, we infer, were latent.   The case shows that they were adjudged to be "false and forged."   There was nothing on their face to indicate to the assignees that they were not genuine, and knowledge of the fact was first conveyed to them by the decision of the Commissioner.   From the nature of the subject matter to which the guaranty refers, and the terms of the guaranty, it is fair to suppose that the intention of the parties was, that the guarantors were to insure the holder of the warrants that the same should pass the ordeal of approval by the Commissioner.   There was no way that his decision could be obtained upon the genuineness of the warrants and assignments, except through the regular course of location, at one of the local offices, and return to the general office for supervision and confirmation of the entry.   It seems therefore that the guaranty must have had direct reference to the decision of the Commissioner, as the event which was to determine the liability of the guarantors; or, in other words, they guaranteed a favorable decision by that tribunal.   It was a promise depending upon a contingency, and in such cases the cause of action does not accrue until the happening of the controlling event.   *See Angel on limitations, sec.* 115 *and note.*   We, therefore, hold that the cause of action did not accrue until the adverse decision of the Commissioner, and is not barred by the Maryland statute of limitations.

In regard to the character in which the Plaintiff sues, we think the attorney for the Defendants labors under a mistake in supposing that the warrants and accompanying guaranty were extinguished when the former were located by Mr. McKenty.   The warrant is not cancelled, nor does the title to the same pass from the locator until it is accepted in payment

of the land by the United States. This acceptance does not become consummate until the entry is fully confirmed by the General Land Office. If confirmed, the act has relation to the time of the entry, but if the entry is rejected for some defect which does not invalidate the warrant itself, it remains the property of the locator. In this case, it being on account of the inviolability of the assignment, the warrant would probably belong to the original party to whom they were issued, but they have never performed their office of being received in payment of land. The sale of the warrants and guaranty to the Plaintiff by McKenty, was intermediate the location and the decision of the Commissioner. Whatever interest McKenty had in the warrants and the guaranty, which was certainly his, passed to his assignee, and was his property at the time of the Commissioner's decision. The cause of action accruing at that time, it accrued to the Plaintiff. It is true he procured an assignment of all claims and causes of action that Officer, Ames and McKenty had on the guaranty, before suing, but that was probably for greater security, and of course does not affect his rights. He also obtained another remedy by the covenant of warranty in the deed of the lands which he took from McKenty, but it does not affect him in this action. For the law on the subject of entries and their cancellation by the General Land Office, see *Randall vs. Edert,* 7 *M. R..,* 450.

The custom pleaded by the Defendants, under which they claim the right to substitute other warrants in the place of those originally sold and guaranteed, is in effect a custom by which the vendor of an article which is warranted to be genuine, and turns out to be spurious, may satisfy his obligation by paying *in kind,* instead of responding in damages according to the rules of the common law. The only question for us to consider is the validity of such a custom, supposing it to be fully established, as the referee on the trial excluded all testimony upon the subject as incompetent, evidently holding that the custom, if it did exist, was invalid and could not be allowed to influence the common law meaning and force of the guaranty.

All contracts made in the ordinary course of business, with-

out particular stipulations, express or implied, are presumed to be made in reference to any existing custom relating to such trade, and it is always competent for a party to resort to such usage to ascertain and fix the terms of the contract. *Chitty on Contracts, p.* 83, *note.* This may be stated as a general rule on the subject of usages of trade. But such usages cannot be set up to contravene an established rule of law, or to vary the terms of an express contract. Nor is a person entering into a contract bound by the usage of a particular business unless it be so general as to furnish a presumption of knowledge, or it was proved that he was acquainted with it. *Same note.*

Now, in regard to the usage under consideration, it is well known that the business of dealing in land warrants is of but very recent date, as it is only within a very brief period that such warrants have been made assignable at law. *See U.S. Statutes at Large, Vol.* 10, *p.* 3. Antiquity, one of the most essential elements of a valid usage, is therefore wanting in this case; but as that feature is more important in reference to the knowledge of parties, than to the character of the usage, we refer to it here, merely as bearing upon the point of sanctioning the same as a new question, without precedent to fortify it.

We have examined the subject to considerable extent, and have been unable to find any decided case upholding a usage of this character. The only judicial intimation that tends that way which we find, is in the case of *Allen vs. Dykers, 3 Hill.,* 593, where the Court, at page 597, in speaking of a usage to pay in kind, where a stockbroker had sold stocks which were pledged to him as collaterals, says, " It is not necessary to determine what effect would be due to such proof in the case of a simple pledge as collateral security, without any further agreement. Possibly the known usage in like cases might be considered as attaching itself to the transaction, and constituting a part of it." The case, however, went off on another point.

In the case of *Wigglesworth vs. Dallison, Douglas,* 201, reported also in 1 *Smith's Leading Cases, p.* 300, a most elaborate collection and review of the cases on the subject of

usages, is made in the notes of *Hare and Wallace*. None of them support the usage contended for here, and many of them, and especially the more modern cases, are opposed to the extension of the doctrine. We feel unwilling to establish a precedent in so new a business, which would contravene a rule of the common law on the subject of damages on such contracts.

The referee was right, and his judgment is affirmed.